**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sylvia P. Velazquez,<br>   Plaintiff,<br>v.<br>Carolyn W. Colvin,<br>   Defendant. | No. CV-14-02637-PHX-DLR<br>**ORDER** |

Plaintiff Sylvia Velazquez seeks review of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits and supplemental security income ("SSI"). For the following reasons, the Commissioner's decision is remanded for further proceedings.

## **BACKGROUND**

On May 26, 2011, Velazquez applied for disability insurance benefits and SSI, alleging disability beginning on April 1, 2010. (A.R. 193.) She appeared with her attorney and testified before an Administrative Law Judge ("ALJ") on February 25, 2013. (*Id.* at 36-71.) A vocational expert also testified. (*Id.*) The ALJ found that Velazquez was not disabled within the meaning of the Social Security Act. (*Id.* at 15-35.) The Appeals Council denied Velazquez's request for review, making the ALJ's decision the Commissioner's final decision. (*Id.* at 1-7, 11-14.) Thereafter, Velazquez appealed to this Court. (Doc. 1.)

## LEGAL STANDARD

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

## DISCUSSION

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the

claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Velazquez meets the insured status requirements of the Social Security Act through December 31, 2013, and that she has not engaged in substantial gainful activity since April 1, 2010. (A.R. 20.) At step two, the ALJ found that Velazquez has the following severe impairments: fibromyalgia, asthma, diffuse myofascial pain, morbid obesity, suspected arthritis of the knees, bipolar disorder, posttraumatic stress disorder ("PTSD"), dysthymia, anxiety disorder with depressive features, and polysubstance dependence, which is in remission. (*Id.*) At step three, the ALJ determined that Velazquez does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. (*Id.* at 21.) At step four, the ALJ found that Velazquez has the RFC to perform:

> light work as defined in 20 [C.F.R.] 404.1567(b) and 416.967(b) except [Velazquez] can lift and/or carry 50 pounds occasionally and 10 pounds frequently; [she] has no limitations in her ability to sit, stand, and/or walk; [she] can occasionally climb stairs and ramps, but can never climb ladders, ropes, or scaffolds; [she] can occasionally stop and crouch, but can never kneel or crawl; [she] must avoid unprotected heights; and, due to mental health and pain medication side effects, [she] can only perform unskilled routine work in a socially limited and stable environment.

(*Id.* at 22.) Based on this RFC, the ALJ found that Velazquez is unable to perform any of her past relevant work. (*Id.* at 30.) However, at step five the ALJ concluded that jobs exist in significant numbers in the national economy that Velazquez could perform, considering her age, education, work experience, and RFC. (*Id.*)

Velazquez argues that the RFC assessed by the ALJ is inconsistent with the limitations imposed by her impairments. Specifically, she contends that the ALJ improperly discounted: (1) medical opinions that assessed limitations inconsistent with sustained work, (2) Velazquez's symptom testimony, and (3) the third-party report of her daughter. (Doc. 15 at 9-24.)

## I. Medical Opinion Evidence

The ALJ is responsible for resolving conflicts in medical testimony. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Generally, more weight should be given to the opinion of a treating physician than to the opinions of non-treating physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Id.* Likewise, an examining physician's opinion generally must be given greater weight than that of a non-examining physician. *Id.* at 830. As with a treating physician, there must be clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons, supported by substantial evidence in the record, for rejecting an examining physician's contradicted opinion. *Id.* at 830-31.

### A. Physiological Opinion Evidence

The ALJ was presented with conflicting medical opinions on the limiting effects of Velazquez's physical impairments. Dr. Cifuentes, Velazquez's treating physician, opined that Velazquez would be unable to work for 8 hours per day, 5 days per week on a consistent basis. (A.R. at 534-35, 930-31.) He opined that, in an 8 hour work day, she would be able to sit, stand, and walk for less than 2 hours, and would be able to lift and carry less than 10 pounds. (*Id.*) He indicated that Velazquez could use her hands and feet occasionally, but could bend, reach, and stoop less than occasionally. (*Id.*) Additionally, he opined that Velazquez's conditions would cause her to miss 4-5 days per month, and that the side effects of her medications would severely limit her ability to work. (*Id.*) These opinions, if credited, would limit Velazquez to a less than sedentary exertional capacity. (*Id.* at 26, 66-68.)

However, consultative physician Dr. Cunningham examined Velazquez and assessed functional limitations consistent with a light exertional capacity. (*Id.* at 26, 63, 516-21.) Specifically, he opined that, despite her impairments, Velazquez: (1) could

occasionally lift 50 pounds and frequently lift 10 pounds; (2) has no sitting, standing, or walking limitations; (3) can occasionally climb ramps and stairs, but can never use ladders, ropes, or scaffolds; (4) can occasionally stoop and crouch, never kneel or crawl, and has no limitations on reaching, handling, fingering, and feeling; and (5) should avoid working around heights. (*Id.* at 517-20.)

The ALJ resolved this conflict by giving little weight to Dr. Cifuentes' opinions and great weight to Dr. Cunningham's. (A.R. 26.) The ALJ concluded that Dr. Cifuentes' opinion was less reliable because "the objective treatment records do not support such a debilitating residual functional capacity," and because Velazquez's impairments could be managed conservatively with medication. (*Id.*) Inconsistency with objective medical records and conservative treatment are specific and legitimate reasons for discrediting medical testimony. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). However, the ALJ did not adequately support her reasons with evidence from the record.

Regarding the objective treatment records, the ALJ states that x-rays "showed only mild-thoracic dextrocurvature" and "no abnormal findings" for Velazquez's lumbar spine. (*Id.*) Velazquez argues, and the Court agrees, that the ALJ's rationale reflects a misunderstanding of her conditions. After concluding that Velazquez suffers from fibromyalgia, the ALJ determined that Dr. Cifuentes' opinion as to the limiting effects of the condition was less reliable because x-rays did not reveal spinal abnormalities. Social Security regulations define fibromyalgia as "a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." *See* SSR 12-2p, 2012 WL 3104869, at \*2. To establish the existence of fibromyalgia a claimant generally must supply evidence that other disorders that could cause these symptoms have been excluded. *Id.* at \*3. That Velazquez's fibromyalgia did not result in abnormal x-rays does not suggest its effects are less limiting that Dr. Cifuentes opined, especially when the condition is defined, in part, by the absence of such objective indicia. *See Benecke v. Barnhart*, 379 F.3d 587,

594 (9th Cir. 2004) (noting that fibromyalgia typically eludes objective measurement); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 109 (2d Cir. 2003) (explaining that "negative findings simply confirm a diagnosis of fibromyalgia" by eliminating other medical condition that might manifest similar symptoms).

Regarding conservative pain management, the ALJ cites May 18, 2011 and September 27, 2012 treatment notes from Dr. Galindo and Physician's Assistant Burzinksi. (A.R. 26.) But these records do not support the ALJ's conclusion. Although the May 18, 2011 treatment note indicates that Percocet was prescribed for Velazquez's lumbago, the note also states that Velazquez "does not have the money to see [a] specialist at this point," and, consequently, referral to pain management and rheumatology would be deferred. (*Id.* at 340.) Rather than indicating Velazquez's conditions could be managed conservatively, this treatment note suggests that Velazquez's course of treatment was the result of her inability to afford more specialized care. Moreover, the September 27, 2012 treatment note states that Velazquez "is on [P]ercocet which is no longer relieving pain." (*Id.* at 914.)

Although the ALJ articulated legitimate reasons for assigning little weight to Dr. Cifuentes' opinion, she erred by not supporting these reasons with substantial evidence in the record.

### B. Psychological Opinion Evidence

The ALJ was presented with conflicting medical opinions on the limiting effects of Velazquez's mental impairments. Dr. Agosto, Velazquez's treating psychiatrist, opined that her mental impairments severely limit her ability to respond appropriately to supervision, coworkers, and customary work pressures. (*Id.* at 932.) He opined that Velazquez has moderately severe limitations in understanding, carrying out, and remembering instructions, and in performing simple tasks. (*Id.*) Ultimately, he concluded that Velazquez's psychiatric symptoms would severely limit the sustainability of her work pace and severely restrict her ability to perform daily work-related activities. (*Id.* at 932-33.)

Three consultative psychologists also examined Velazquez. Dr. Steingard opined that Velazquez becomes easily frustrated and confused, even with simple directions, is easily distractible, and that her socialization and ability to adapt to the competitive marketplace are limited. (*Id.* at 526-27.) Dr. Rabara examined Velazquez and concluded that she could not adequately be assessed because of her poor effort and exaggeration. (*Id.* at 532.) He questioned Velazquez's claims of depression and anxiety, and opined that her low test scores, including a Full Scale IQ score of 55, were implausible. (*Id.*) Finally, Dr. Bowen examined Velazquez and was unable to assess her level of functioning "because of her exaggeration . . . ." (*Id.* at 793.) Like Dr. Rabara, Dr. Bowen opined that Velazquez "is clearly embellishing and exaggerating," and also noted that she "has consistently been inconsistent – across all of the records she reports different symptoms, patterns of substance abuse, and accounts of abuse. She has also consistently put forth very little effort . . . ." (*Id.*)

The ALJ resolved this conflict by assigning little weight to Dr. Agosto's opinion, partial weight to Dr. Steingard's opinion, and some weight to the opinions of Drs. Rabara and Bowen. The ALJ gave Velazquez "the benefit of the doubt," and found that she "is limited to simple tasks with some social limitations." (*Id.* at 30.)

The ALJ supplied sufficient and adequately supported reasons for weighing the psychological opinion evidence as she did. She explained that Dr. Agosto's opinion was undercut by evidence that Velazquez's depression stabilized with medication, and that independent examination findings from the consultative psychologists indicated that Velazquez exaggerated her symptoms, put forward little effort during examinations, and gave conflicting reports of past trauma and substance abuse. (*Id.* at 28-30.) The ALJ did not arbitrarily weigh the psychological opinion evidence.[1]

---

[1] Velazquez suggests that the ALJ erred in assigning little weight to the Global Assessment of Functioning ("GAF") scores throughout the record. (Doc. 15 at 17.) The Court disagrees. The ALJ reasonably concluded that, comparatively, the GAF scores were a less reliable indicator of Velazquez's functional capacity than the more detailed medical notes and reports in the record. (A.R. at 27.)

Velazquez also contends that the ALJ erred by failing to address a letter submitted

- 7 -

**II. Velazquez's Symptom Testimony**

Velazquez argues that the ALJ improperly discredited her symptom testimony. In evaluating the credibility of a claimant's symptom testimony, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The ALJ found that Velazquez's impairments could reasonably be expected to cause her alleged symptoms, but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."[2] (A.R. at 24.)

Although the ALJ, over the course of several pages, summarizes the symptom testimony and medical evidence, the ALJ does not identify which statements she finds credible and which she does not. Nor does the ALJ "link that testimony to the particular parts of the record supporting her non-credibility determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015.) Instead, "she simply state[s] her non-credibility conclusion and then summarize[s] the medical evidence supporting her RFC determination." *Id.* As the Ninth Circuit recently reiterated in *Brown-Hunter*, "[t]his is

---

with her medical records, which found her eligible for Seriously Mentally Ill ("SMI") benefits through the State of Arizona. (A.R. at 679-80.) Although the findings of other agencies can be probative of disability when the criteria and evaluation processes are similar to those utilized in Social Security disability cases, *see McCartney v. Massanari*, 298 F.23d 1072, 1075-76 (9th Cir. 2002), there is no evidence in the record regarding the basis for the SMI determination. Velazquez bears the burden of proving that she is disabled, and the ALJ did not err by not discussing a letter which, without some context and explanation, has little probative value.

[2] Notably, although Drs. Rabara and Bowen thought Velazquez was exaggerating her symptoms and observed that she provided inconsistent information about her past trauma and substance abuse, the ALJ did not make a malingering finding when discussing the credibility of Velazquez's symptoms testimony. (A.R. 22-24.) A reviewing court is "constrained to review the reasons the ALJ asserts," *Connet v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003), and may not "affirm the agency [decision] on a ground not invoked by the ALJ," *Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015).

not the sort of explanation or the kind of 'specific reasons' [the Court] must have in order to review the ALJ's decision meaningfully . . . ." *Id.*

**III. Third-Party Report**

Finally, Velazquez argues that the ALJ improperly discredited the third-party report of her daughter. The ALJ must take lay testimony regarding a claimant's symptoms into account unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Here, the ALJ concluded that the statements of Velazquez's daughter were only partially credible, given that certain of Velazquez's daily activities were inconsistent with the severity of symptoms reported by her daughter. Additionally, the ALJ found that Velazquez's daughter is not unbiased because she has a familial motivation and financial interest in seeing Velazquez receive benefits, considering the two lived together. (A.R. at 24.) The ALJ offered germane reasons for only partially crediting the third-party report of Velazquez's daughter. The Court finds no error.[3]

## CONCLUSION

For the foregoing reasons, the Court finds that the ALJ erred in weighing the medical opinion evidence concerning the limiting effects of Velazquez's physical impairments and in discrediting Velazquez's symptom testimony. However, given the conflicts in the medical testimony, the Court finds that remanding for computation of benefits is inappropriate. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1105-07 (9th Cir. 2014). Instead, the Court remands this case for further proceedings. On remand, the ALJ shall reassess and resolve the conflicting medical opinion evidence, as well as Velazquez's symptom testimony, consistent with *Brown-Hunter*.

//

//

---

[3] Velazquez relies on *Brown-Hunter* to argue that the ALJ's rationale for discrediting the third-party report of her daughter is inadequate. However, *Brown-Hunter* addressed the "specific reasons" standard applicable to claimant symptom testimony, not the "germane reasons" standard applicable to third-party reports. 806 F.3d at 494.

- 9 -

1    **IT IS ORDERED** that the final decision of the Commissioner of Social Security
2  is **REMANDED** for proceedings consistent with this order.  The Clerk shall enter
3  judgment accordingly and shall terminate this case.

4    Dated this 10th day of February, 2016.

Douglas L. Rayes
United States District Judge